I'OR PUBLICATION IN WEST'S HAWAI'1 REPORTS AND PACIFIC REPORTER 

 IN THE INTERMEDIATE COURT OF APPEALS

 OF THE STATE OF HAWAI'I
 Electronically Filed
 Intermediate Court of Appeals
 --000--­ 30317
 27-SEP-2010
 03:27 PM
 STATE OF HAWAI'I, Plaintiff-Appellant,
 vs.
 RANSON J.K. BULLARD, Defendant~Appellee

 NO. 30317

 APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT 

 EWA DIVISION 

 (CASE NO. 1DTC-09 013673) 

 SEPTEMBER 27, 2010 

 NAKAMURA, CHIEF JUDGE, FUJISE, and REIFURTH, JJ. 

 OPINION OF THE COURT BY NAKAMURA, C.J. 

 Defendant-Appellant Ranson J.K. Bullard (Bullard) was
convicted of excessive speeding, in violation of Hawaii Revised
Statutes (HRS) § 291C-105(a) (1) and (a) (2) (2007).!! for driving

 11 HRS § 291C-105 (2007) provides in relevant part:

 Excessive Speeding. a) No person shall drive a motor 

 vehicle at a speed exceeding: 

 (1) The applicable state or county speed limit by thirty
 miles per hour or more; or
 (2) Eighty miles per hour or more irrespective of the
 applicable state or county speed limit.
 (b) For the purposes of this section, "the applicable
 state or county speed limit" means:
 (1) The maximum speed limit established by county
 ordinance;
 (2) The maximum speed limit established by official signs
 placed by the director of transportation on highways
 under the director's jurisdiction; or
 (continued ... )
 FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER 

his vehicle at least thirty miles per hour over the applicable
speed limit and/or in excess of eighty miles per hour. The
District Court of the First Circuit strict court)?J entered
its Judgment on November 4, 2009. Both Bullard and Plaintiff-
Appel State of Hawai'i (State) agree that pursuant to State v.
Fitzwater, 122 Hawai'i 354, 227 P.2d 520 (2010), Bullard's
excessive speeding conviction must be vacated because there was
insuff ient foundation laid to support the admission of the
speed check card, which was used to verify the accuracy of the
officer's speedometer. As in Fitzwater, without the speed check
card, there was insufficient evidence to establish the accuracy
of the speedometer in the officer's vehicle and to support
Bullard's conviction for excessive speeding. The part s
disagree, however, over whether entry judgment on non­
criminal traffic infraction of "regular" speeding, in violation
of HRS § 291C-102 (a) (I) (2007) ,11 is appropriate.
 In Fitzwater, the Hawai'i Supreme Court, after vacating
Fitzwater's excessive speeding conviction for lack of sufficient
evidence, remanded the case for entry judgment on the lesser
included non-criminal infraction of regular speeding,

 !I ( ... continued)
 (3) The maximum speed limit established pursuant to
 section 291C 104 by the director of transportation or
 the counties for school zones and construction areas
 in their respective jurisdictions.

 Y The Honorable T. David Woo presided.

 1/ HRS § 291C-I02 (2007) provides in relevant part:

 Noncompliance with speed limit prohibited. (a) A person
 violates this section if the person drives:

 (1) A motor vehicle at a speed greater than the maximum
 speed limit other than provided in section 291C-I05i
 or

 (2) A motor vehicle at a speed less than the minimum
 limit,

 where the maximum or mlnlmum speed limit is established by county
 ordinance or by official signs placed by the director of
 transportation on highways under the director's jurisdiction.

 2

 FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER 

violation of HRS § 291C 102 (a) (1) . at 357, 227 P.3d at 523.
Citing , the State argues that we should similarly
remand the case for entry of judgment for regular speeding
because there was suff ient evidence to establish that Bullard
drove his car at a speed exceeding the maximum speed limit. On
the other hand, Bullard contends that Fitzwater was wrong in
remanding the case for entry of judgment for the non criminal
traffic raction of regular speeding because a non criminal
traffic infraction cannot be a lesser included offense of a
criminal offense.
 Based on , we reject Bullard's contention that
regular speeding cannot be treated as a lesser included offense
of excessive speeding for purposes of determining whether entry
of judgment for regular speeding is appropriate. However, we do
not agree with the State that entry of judgment against Bullard
for regular speeding is appropriate based simply on the State's
showing that there was sufficient evidence at trial to support a
regular speeding violation. Instead, we conclude that where an
appellate court determines that evidence necessary to prove the
greater offense was erroneously admitted, the erroneous admission
of that evidence must be harmless beyond a reasonable doubt with
respect to the lesser included offense for the entry of judgment
on the lesser included offense to be appropriate. In Bullard's
case, we conclude that the error in admitting the speed check
card was harmless beyond a reasonable doubt with respect to
Bullard's regular speeding violation. Accordingly, we remand the
case for entry of judgment against Bullard for regular speeding,
in violation of HRS § 291C 102 (a) (1) .
 BACKGROUND
 Bullard was charged with driving a motor vehicle at a
speed exceeding the applicable speed limit by thirty miles per
hour or more and/or driving at a speed exceeding eighty miles per
hour irrespective of the applicable speed limit, in violation of
HRS § 291C 105 (a) (1) and/or HRS § 291C 105 (a) (2) .

 3

 FOR PUBLICATION IN WEST'S HAWAI' I REPORTS AND PACIFIC REPORTER 

 Bullard was cited for excessive speeding by Honolulu.
Police Department Officer corinne Rivera (Officer Rivera). At
trial, Officer Rivera testified that she had been a patrol
officer for almost twenty-one years. On the evening of March 24,
2009, Officer Rivera was on duty, driving a 2003 Toyota 4Runner,
which was her "subsidized" police v,ehicle. Officer Rivera
testified that since obtaining her vehicle in 2004, had been
subject to a "speed check" on a yearly basis, with the last two
speed checks done at a shop she referred to as "Roy's." During
the speed checks, Officer Rivera's car was placed on a machine
that "calculates the [car's] speed to see if it's accurate
according to their machine."
 At trial, over Bullard's objection, the district court
admitted a speed check card from Roy's Kalihi Automotive Center &
Towing for the speedometer of Officer Rivera's vehicle. The
speed check card contained a certification date of July 17, 2008,
and an expiration date of July 17, 2009. According to the speed
 ~
check card, the speedometer of Officer Rivera's vehicle was
accurate at speeds of 25, 35, 45, 55, 65, 75, 85, and 95 miles
per hour.
 Officer Rivera testified that on March 24, 2009, at
approximately 10:00 p.m., she encountered Bullard while traveling
westbound on the H-1 freeway near Waikele and headed toward
wai'anae. Bullard, who was driving an Acura TL, cut in front
Officer Rivera, causing her to step on her brake to slow down.
At that point, Officer Rivera was traveling with the flow of
traffic. Officer Rivera flashed her highlights at Bullard to let
him know he had cut in front of her. Bullard "accelerated" and
he "just started to take off." Even with her windows up, Officer
Rivera heard Bullard's vehicle accelerate, with the sound of
Bullard's engine increasing to a "higher frequency" and getting
louder.
 Bullard's vehicle immediately pulled away from Off
Rivera's vehicle, which was traveling fifty-five miles per hour.

 4

 FORPUBLlCATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Officer Rivera described Bullard's action in pulling away from
her as follows:
 Q. [By the Prosecutor:] [D)id [Bullard's
 car] pull away from you?

 A. [By Officer Rivera:) Yes, it pulled away from
 me, urn -- right away.

 Q. Right away?
 A. Yes.

 Q. And, urn based on your 21 years experience in
 patrol, when he took off, how fa -- would you say it was
 fast or just trying to get out of your way or was he, uh
 taking off at so at this point you're going 55.

 A. Yes.

 Q. And whey you say he took off, what did that
 based on your 21 years of ex - of experience, what did that
 indicate to you at this point?

 A. That he was speeding away.

 Q. He was speeding.

 A. Yeah.

 Q. Speeding above the speed limit.
 A. Yes.

 Officer Rivera accelerated to pursue Bullard. When she
got behind Bullard, Officer Rivera paced Bullard's vehic for
approximately two-tenths of a mile, maintaining the same distance
between herself and Bullard. ficer Rivera's speedometer showed
that Bullard was traveling 91 miles per hour during this pacing.
Officer Rivera testified that speed limit signs in the area
showed that the speed limit was fifty-fife mi s per hour, and
the district court took judicial notice, based on a speed
schedule proffered by the State, that the applicable speed limit
was fty-five miles per hour. Officer Rivera pulled Bullard
over and cited him for excessive speeding and unsafe lane change.
 The State rested after calling Officer Rivera. Bullard
moved for judgment of acquittal, which the district court denied.
Bullard then testified in his own defense.

 5

 FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER 

 Bullard testified that on the evening of March 24,
2009, he had f shed work and was on his way home. While
changing lanes, he "forgot to check [his] blind spot," and
"accidently cut [Off Rivera] off." Bullard testified that,
at that point, he was going about 45 or 50 miles per hour.
Off Rivera "high beamed" Bullard, so Bullard "sped up to like
70" to give Officer Rivera space. Bullard knew he was going 70
miles per hour because he looked at his speedometer. Bullard
admitted that he had been speeding. He stated, "I mean, like I
admit that I was speeding, but itfs not excessively. . I was
going like at the most 70." Later, Bullard revised his estimate
and testified that at most, he was traveling between 70 and 75
miles per hour.
 After hearing the evidence, the district court found
Bullard guilty as charged of excessive speeding. The district
court found that Bullard had been traveling at a speed of 91
miles per hour in an area where the speed limit was 55 miles per
hour, and that Bullard was IIboth speeding over 80 miles an hour
and also speeding more than 30 miles per hour in excess of the
speed limit."
 DISCUSSION
 I.
 Bullard argues that pursuant to the Hawai'i Supreme
Courtfs decision in Fitzwater, 122 Hawai'i 354, 227 P.2d 520, the
State failed to lay a sufficient foundation to support the
admission of the speed check card. He further argues that
without the speed check card, there was insufficient evidence to
support his conviction for excessive speeding. The State
concedes error on both these points. We agree with the Statefs
concession of error because we conclude that Fitzwater provides
controlling authority that Bullardfs arguments on these two
points are correct.

 6
 FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER 

 II.
 A.
 We now turn to the question disputed by the parties,
namely, whether entry of judgment against Bullard on the non­
criminal traffic infraction of regular speeding, in violation of
HRS § 291C-102(a) (1), is appropriate in this case.
 In state v. Malufau, 80 Hawai'i 126, 906 P.2d 612
(1995), the Hawai'i Supreme Court discussed whether the
protection against double jeopardy under the United States and
Hawai'i Constitutions IIbars retrial on I sser' i;ncluded offenses
after a determination on appeal that insufficient evidence was
presented at trial to support a conviction [on the greater
offense.] II Id. at 134-35, 906 P.2d at 620-21. In the context of
that discussion, the supreme court noted that federal courts and
most state courts follow the rule that "if an appellate court
deems the evidence insufficient as a matter of law to support a
jury's guilty verdict on a greater offense but finds the evidence
sufficient to support a conviction on a lesser included offense,
it may enter a judgment of conviction on that lesser included
offense. II Id. at 135, 906 P.2d at 621 (block quote format and
citations omitted). The Hawai'i Supreme Court stated the
rationale for this rule as follows:
 When the evidence is found insufficient on appeal only
 as to the greater offense then it is clear that had
 the trial judge acted properly the lesser offense
 would have gone to the jury and would have certainly
 resulted in conviction, as is reflected by the fact
 that the jury's actual verdict shows that the jury
 found the existence of every element of the
 lesser-included offense as well.
Id. at 135 36, 906 P.2d at 621-22 (block quote format, brackets,
and citation omitted) .
 The Hawai'i Supreme Court noted that in Lockhart v.
======' 488 U.S. 33, 38 (1988), the United States Supreme Court
had "reaffirmed the principle that the double jeopardy clause
does not bar retrial after a conviction is overturned on the
basis of trial error." Malufau, 80 Hawai'i at 136, 906 P.2d at
622. The Hawai'i Supreme Court stated:

 7

 FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER 

 "From this, it would seem to follow that if the appellate
 court has also found some error in the trial [in addition to
 a determination that insufficient evidence to support a
 conviction of the greater offense was at trial],
 then it is proper to remand the case retrial on the
 lesser included offense."

Id. (citation omitted; brackets in original). The Hawai'i
Supreme Court held that IIremanding a case for retrial on lesser
included offenses following an appellate determination that
insufficient evidence to support a conviction of a greater
offense was presented at trial does not offend the double
jeopardy clause" of the United states Constitution or the Hawai'i
Constitution. i / The supreme court concluded that there was
insufficient evidence to support Malufau·s conviction on the
charged offense of first degree assault, but sufficient evidence
to support convictions on the lesser included offenses of second
and third degree assault. Id. at 133-34, 906 P.2d at 619-20.
The supreme court remanded the case for retrial on these lesser
included offenses. at 134, 138, 906 P.2d 620, 624.
 In cases decided after Malufau, the Hawai'i Supreme
Court has remanded the case for entry of a judgment of
conviction, instead of retrial, on the lesser included offense
after concluding on appeal that there was insufficient evidence
to support the conviction on the greater offense.
121 Hawai'i 74, 90 91, 214 P.3d 613, 629-30 (2009); State v.
Wallace, 80 Hawai'i 382, 414-16, 910 P.2d 695, 727-29 (1996).
The supreme court cited Malufau in support of these decisions.
 , 121 Hawai'i at 90, 214 P.3d at 629; Wallace, 80 Hawai'i at
416, 910 P.2d at 729.
 B.
 In Fitzwater, 122 Hawai'i at 377 78, 227 P.3d at 543­
44, the Hawai'i Supreme Court remanded the case for entry of a
judgment on the lesser included traffic infraction of regular
speeding after concluding that there was insufficient evidence to

 !I The supreme court further held that remanding the case for retrial on
the lesser included offense in this situation also did not violate HRS § 701
111(1) (c) (1993). , 80 Hawai'i at 137, 906 P.2d at 623.

 8

 FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

support Fitzwater's excessive speeding conviction. Fitzwater was
charged with excessive speeding for traveling 70 miles per hour
in an area where the speed limit was 35 miles per hour, thereby
exceeding the applicable speed limit by at least 30 miles per
hour, violation of HRS § 291C-105(a) (1). The officer who
issued the citation testified that he paced Fitzwater's motorcyle
traveling at 70 miles per hour for two tenths of a mile based on
the o f f ' s speedometer reading. Id. at 358, 227 P.3d at 524.
 The trial court relied upon alternate grounds in
finding beyond a reasonable doubt that Fitzwater's speed was 70
miles an hour. The trial court relied upon its finding that the
speed check evidence showed that the officer's speedometer had
been found to be accurate at both 65 and 75 miles hour.
at 360, 227 P.3d at 526. The court alternatively relied
upon its finding that "irrespective" of the speed check evidence,
the officer's pacing of tzwater at 70 miles per hour was
"reasonably accurate" based on the officer's testimony that he
had operated his patrol car almost daily for over a year,
observed the operation of the speedometer, and found that
seemed to be operating normally at all times. Id.
 The supreme court's analysis in concluding that the
entry of judgement on regular speeding was appropriate was, in
relevant part, as follows:
 As noted above, the district court relied on alternate
 grounds in finding that Fitzwater's "speed was 70 miles an
 hour beyond a reasonable doubt." In addition to the speed
 check evidence, which we have concluded was improperly
 admitted, the district court held that [Officer] Ah Yat's
 testimony that he had been operating his vehicle almost
 daily for over a year and observed that his speedometer
 seemed to be operating normally at all times provided an
 independent basis for concluding that Fitzwater had exceeded
 the speed limit by 35 miles per hour. Similarly, in its
 Answering Brief to the [Intermediate Court of Appeals], the
 State argued that this testimony by Ah Yat was sufficient
 "to establish that the speedometer of the police vehicle was
 accurately operational on the date of the offense . "
 "HRS § 701 114 (1) (a) and (b) (1993)
 beyond a reasonable doubt of each element of the
 . . .. [State v.l Assaye, 121 Hawai'i [204,] 216, 216
 P.3d [1227,] 1239 [(2009)] (quoting [State v.l Manewa, 115
 Hawai'i [343,] 357-58, 167 P.3d [336,] 350 51 [(2007)]). To
 prove that Fitzwater was speeding excessively in violation

 9
 FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER 

 of HRS § 291C-I05, the State must prove beyond a reasonable
 doubt that Fitzwater was driving at a speed exceeding the
 speed limit by 30 miles per hour or more. Id. Ah Yat
 testified that Fitzwater was traveling 70 miles per hour in
 a 35 mile per hour zone, which was 5 miles per hour greater
 than the threshold established by HRS § 291C-I05. Other
 than Ah Yat's testimony that his speedometer appeared to
 have been operating normally throughout the previous ,
 there was no other admissible evidence to establish Ah
 Yat's speedometer was accurate and in proper working order.
 Thus, we must decide whether Ah Yat's testimony alone was
 sufficient to establish beyond a reasonable doubt that the
 speedometer on his police vehicle was accurate to within 5
 miles per hour on the night of the offense. We conclude
 that it was not, given the relatively small margin of error
 of 5 miles per hour .

 . Accordingly, there was insufficient evidence in the
 record to sustain Fitzwater's conviction under HRS §
 291C-I05, and the conviction must be vacated. Cf. Assaye,
 121 Hawai'i at 216, 216 P.3d at 1239. However, there was
 sufficient evidence to establish that Fitzwater was driving
 his vehicle "at a speed greater than the maximum speed
 limit" in violation of HRS § 291C-I02(a) (1), based on
 Fitzwater's admission during his testimony that he was
 driving in excess of the speed limit, as well as Ah Yat's
 testimony. See State v. Simpson, 64 Haw. 363, 370, 641 P.2d
 320, 325 (1982) ("Under the 'waiver doctrine' appellate
 courts will review the sufficiency of the evidence in light
 of all the evidence presented in the record."); State v.
 Pudiquet, 82 Hawai'i 419, 423-425, 922 P.2d 1032, 1036 1038
 (App. 1996) (considering the entire record, including the
 defendant's testimony, in assessing the sufficiency of the
 evidence) i State v. Gomes, 117 Hawai'i 218, 224, 177 P.3d
 928, 934 (2008) (concluding that because the defendant "put
 on evidence after moving for a judgment of acquittal at the
 end of the State's case, he waived any error in the denial"
 of this motion). Accordingly, we remand for entry of a
 judgment that Fitzwater violated HRS § 291C-I02(a) (1), in
 accordance with the applicable statutes governing
 non-criminal traffic infractions. State v. Line, 121
 Hawai'i 74,90,214 P.3d 613,629 (2009) (lilt is established
 that 'if an appellate court determines that the evidence
 presented at trial was insufficient to support a conviction
 of a greater offense but sufficient to support a conviction
 of a lesser included offense, the court may remand for entry
 of judgment of conviction on the lesser included offense. ''')
 (citation omitted) .
 at 377-78, 227 P.3d at 543 44 (footnote and brackets in
original omitted; emphases added) .
 C.
 Citing Fitzwater, the State argues that because there
was sufficient evidence presented at trial to prove that Bullard
IIwas noncompliant with the speed limit,lI this court should remand
the case for entry of a judgment that Bullard committed the
infraction of regular speeding, in violation of HRS § 291C­

 10 

 FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER 

102(a) (I). We conclude that the Staters mere showing that the
evidence presented at trial was sufficient to establish that
Bullard committed a regular speeding infraction is not enough, by
itself, to warrant the entry of judgment on the regular speeding
infraction. Such a showing would be sufficient to justify
remanding Bullard's case for retrial on the lesser included
regular speeding infraction. However, to warrant remand for
entry of judgment on the regular speeding infraction, the State
must also show that the erroneous admission of the speed check
evidence was harmless beyond a reasonable doubt as to the
determination that Bullard committed the regular speeding
infraction.
 The general authority of an appellate court to remand a
case for entry of judgment on the lesser included fense,~!
rather than retrial, when the evidence is insufficient to support
the greater offense for which the defendant was convicted but is
sufficient to support a lesser included offense, is based on the
following rationale: "[T]here is no need to retry a defendant
for a lesser included fense when the elements of the lesser
included offense were necessarily proven to jury beyond a
reasonable doubt in the course of convicting the defendant of a
greater offense." State v. Haynie, 867 P.2d 416, 418 {N.M.
1994}. In Malufau, the Hawai'i Supreme Court echoed this
rationale for the appellate court's authority to direct entry of
judgment on the sser included offense. The supreme court
explained that because the verdict on the greater offense shows
that the jury must have found the existence of every element
the lesser included fense, "it is clear that had the t
judge acted properly [by granting judgment of acquitt on the
greater offense for insufficient evidence], the lesser [included]

 V For purposes of our analysis, we will use the term "lesser included
offense" to refer to an offense or violation of a lower class and grade than
the greater offense and which the trier of fact necessarily found had been
committed in finding the defendant guilty of the greater offense. See
=~~, 80 Hawai'i at 138, 906 P. 2d at 624; Wallace. 80 Hawai'i at 415 I 910
 at 728.

 11 

 FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFrC REPORTER

offense would have gone to the jury and would have certainly
resulted in conviction." Malufau, 80 Hawai'i at 135 36, 906 P.2d
at 621-22.
 A difficulty arises, however, where the appellate ~ourt

determines that certain evidence presented to the tr of fact
was improperly admitted. In a typical appeal in which the
appellate court finds that evidence was erroneously admitted, we
do not simply affirm the defendant's conviction upon a
determination that the properly admitted evidence was sufficient
to support the defendant's conviction. Instead, we analyze
whether despite the sufficiency of the properly admitted
evidence, there is a reasonable possibility that the trial
court's erroneous admission of evidence might have contributed to
the defendant's conviction. See State v. Machado, 109 Hawai'i
445, 452 53, 127 P.3d 941, 948-49 (2006) In other words, we
analyze whether the erroneous admission evidence was harmless
beyond a reasonable doubt. Where evidence is improperly
admitted, we cannot know sure (i.e., beyond any possible
doubt) whether the trier of fact would have reached the same
result without the improperly admitted evidence. Nevertheless,
we affirm the defendant's conviction if we can say that the error
was harmless beyond a reasonable doubt.
 Logic dictates that the same harmless error analysis
must apply in determining whether entry of judgment on the lesser
included offense is appropriate where the erroneous admission of
evidence renders the evidence insufficient as to the greater
offense, but sufficient as to a lesser included offense.
Doreus v. United States, 964 A.2d 154, 157-60 (D.C. 2009)
(applying harmless error analysis in deciding whether entry of
judgment on lesser included fense was appropriate in light of
erroneous admission of evidence) i see also Allison v. United
States, 409 F.2d 445, 451 (D.C. Cir. 1969) (concluding that for
an appellate court to exercise its authority to enter judgment on
a lesser included offense, it must be clear that "no undue
prejudice will result to the accused n ) . This analysis is

 12
 FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

particularly important when the evidence erroneously admitted is
relevant to proving elements for the greater offense and the
lesser included offense. The trier fact's finding that the
greater offense had been committed establishes that it also found
that the prosecution had proved the elements of the sser
included offense. However, the potential effect of the erroneous
admission of evidence on the lesser included offense must be
determined before entry of judgment on the lesser included
offense is appropriate. Otherwise, the appellate court may be
directing entry of judgment on the ser included offense in a
case where the erroneous admission of evidence prejudiced the
defendant's rights as to both the greater offense and the lesser
included offense.
 D.
 The decisions of the Hawai'i Supreme Court are
consistent with this analysis. For example, in Malufau the
supreme court concluded that there was insufficient evidence of
first degree assault of which Malufau was convicted, but
sufficient evidence of the lesser included offenses of second and
third degree assault. Malufau, 80 Hawai'i at 132-34, 906 P.2d at
618-20. The supreme court also held that the trial court had
erred in permitting a doctor to testify about the severity of the
injuries that the victim would have sustained in the absence of
treatment. Id. at 130, 906 P.2d at 616. The supreme court
remanded for a new trial on the lesser included offenses, instead
of for entry of judgment on a lesser included offense. Id. at
138, 906 P.2d at 624. Although the supreme court did not
specifically discuss the harmless error analysis, it suggested
that the erroneous admission of the doctor's testimony was not
harmless as to the lesser included offense of second degree
assault. In discussing whether HRS § 701-111(1) (c) barred
retrial, the supreme court noted that nif Malufau had been
convicted of assault in the second degree, we would have held
there was sufficient evidence to sustain the conviction, but
would have remanded for a retrial in light of the circuit court's

 13 

 FOR PUBLICATION IN WEST'S HAW AI'I REPORTS AND PACIFIC REPORTER 

erroneous admission of Dr. Walczak's testimony." Id. at 137, 906
P.2d at 623.
 In Wallace, the supreme court held that the trial court
erred in admitting a chemist's testimony about the net weight of
cocaine seized from Wallace because an inadequate foundation had
been laid regarding the reliability of the scale used to weigh
the cocaine. Wallace, 80 Hawai'i at 412, 910 P.2d at 725.
Without the erroneously admitted evidence, there was fficient
evidence to prove the charged offense of first degree promotion
of a dangerous drug, which required proof that Wallace possessed
at least one ounce of cocaine. Id. at 413, 910 P.2d at 726. The
supreme court remanded the case for entry of judgment of
conviction on the lesser luded offense of third degree
promotion of a dangerous drug, which only required proof that
Wallace possessed cocaine in any amount. at 416, 910 P.2d at
729. The erroneous admission of the evidence regarding the net
weight of the cocaine was clearly harmless beyond a reasonable
doubt as to the included fense of third degree promotion of a
dangerous drug since that lesser included offense did not require
proof of the weight of the cocaine.
 Similarly in ~~~====,
 the erroneous admission of the
speed check card was harmless beyond a reasonable doubt as to the
included infraction of regular speeding because the trial court's
express findings made clear that it found Fitzwater guilty of
excessive speeding "irrespective" of the speed check evidence.
Fitzwater, 122 Hawai'i at 360, 227 P.3d at 526. The trial
court's express findings definitively established that it would
have found that Fitzwater had committed the infraction of regular
speeding even without the speed check evidence.~1

 ~I As noted, the supreme court held that without the speed check card,
the evidence was insufficient to prove excessive speeding but was sufficient
to prove the lesser included speeding infraction. Fitzwater, 122 Hawai'i at
377-78, 227 P.3d at 543-44.

 14
 FOR PUBLICATION IN WEST'S HAWAI'1 REPORTS AND PACII'lC REPORTER

 E. 

 Bullard's case is different from 
 because
there are no comparable findings by the trial court on how it
would have viewed the evidence irrespective of the speed check
card. In Bullard's case/ the district court did not enter
findings establishing that it would have found that Bullard
committed a regular speeding infraction even if the speed check
card had not been admitted. Accordingly/ we must determine
whether the erroneous admission of the speed check card was
harmless beyond a reasonable doubt as to the lesser included
regular speeding infraction in deciding whether to remand
Bullard's case for retrial or for entry of judgment on the lesser
included regular speeding infraction.
 We conclude/ under the facts of this case/ that the
erroneous admission of the speed check card was harmless beyond a
reasonable doubt with respect to the lesser included regular
speeding infraction. The properly admitted evidence showed that
after cutting in front of Officer Rivera/ who had been traveling
with the flow of traffic/ Bullard "accelerated/II IIjust started to
take off/" and immediately pulled away from Officer Rivera. More
significantly/ Bullard himself admitted in his testimony that he
had been speeding/ that he "sped up to like 70 11 in a 55 miles per
hour zone/ and that lIat most" he was traveling between 70 and 75
miles per hour. Under these circumstances/ there is no
reasonable possibility that the erroneous admission of the speed
check card might have fected the district court's finding that
Bullard drove his car in excess of the maximum 55 miles per hour
speed limit.
 F.
 We reject Bullard's argument that Fitzwater was wrong
in remanding the case for entry of judgment for the non-criminal
 fic infraction of regular speeding because a non-criminal
traffic infraction cannot be a lesser included offense of a
criminal offense. Bullard provides no persuasive explanation for

 15 

 FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER 

why the analysis applicable to lesser included criminal offenses
should not also apply to lesser included traffic infractions.
 In any event, Bullard acknowledges that
rejected lithe claim he advances here,n but he argues that
Fitzwater was wrongly decided. This court is not at liberty to
overturn a decision of the Hawai'i Supreme Court. Accordingly,
we reject Bullard's contention that we lack the authority to
remand the case for entry of judgment on the lesser included
traffic infraction of regular speeding.
 CONCLUSION
 We vacate the November 4, 2009, Judgment of the
district court, and we remand the case for entry of a judgment
that Bullard committed the traffic infraction of regular
speeding, in violation of HRS § 291C-102(a) (1).

On the briefs:

Jennifer D.K. Ng
Deputy Public Defender
for Defendant-Appellant

Delanie D. Prescott Tate
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appel

 16